RHODES, APPELLANT, v. JENKINS, APPELLEE.

INDORSER'S LIABILITY.
The indorser of commercial paper is responsible for its genuineness
and that of all previous indorsements.

*Appeal from Superior Court of City of Denver.*

APPELLEE, Washington I. Jenkins, in his complaint bases
his right to recover on the following allegations : That on
the 8th day of September, 1883, at Weston, Mo., Railey &
Bro., bankers, made their draft on Donnell, Lawson & Simp-
son of New York, payable to the order of John H. Hall, for
$1,997. That thereafter appellant, Ledru R. Rhodes, pre-
sented this draft to the German National Bank of Denver
indorsed payable to his order, and in turn indorsed the draft
in question to the German National Bank for collection;
that the bank in turn indorsed it to W. W. Sherman, its cash-
ier, for collection, to whom it was paid by the drawees on Oc-
tober 1st. That the German National Bank paid the proceeds
to appellant, and soon thereafter, learning that the payee's
indorsement was a forgery, the bank notified appellant there-
of and demanded of him repayment of the amount advanced.
That he returned to the bank the sum of $500, and refused
to refund the remainder. That the sum so refunded and the
further sum of $997 the Denver bank had been compelled to
refund to Donnell, Lawson & Simpson, the drawees; the
amount so refunded, with an additional $500, which Railey
& Bro. agreed to pay, making the total amount of the draft.
That on January 11, 1884, the German National Bank trans-
ferred its claim to plaintiff.

The answer consisted of a general denial and a special de-
fense. To the special defense a demurrer was interposed
and sustained. No application having been made to amend,
the cause came on for trial before the court without a jury
on the complaint and general denial. The testimony at the

trial was in substantial accord with the allegations of the second defense and developed the following circumstances attending the transaction.

In August and September, 1883, a person by the name of John H. Hall resided in Denver. This man had lived near Weston, Mo., for upwards of thirty years theretofore, and for many years had been a regular customer of the firm of Railey & Bro. of Weston, and was well known to them. He removed to Denver in the spring of 1883, at the time leaving with Railey & Bro. notes for collection and money on deposit. From time to time through the summer of 1883, he had forwarded his check by mail to them and they had paid the same by draft sent by mail to him in care of the German National Bank, where the drafts were cashed. About the first of September, the date of the draft in question, one Jack Lascere, *alias* John H. Hall, was confined in the county jail of Arapahoe county under a charge of forgery. Hall engaged appellant to act as his counsel in defending him against this charge. Appellant states that while this man was introduced to him as John H. Hall, he was also known by the name of Jack Lascere, but which was his real and which his assumed name the testimony leaves in doubt, though it is admitted that the appellant received the draft in question from the prisoner thus confined and thus known, indorsed as John H. Hall, and in turn indorsed and presented it to the German National Bank for collection. The draft was at once forwarded by that bank to its New York correspondent and by him presented to the drawees, Donnell, Lawson & Simpson, and by them paid and the proceeds credited to the German National Bank, and by that bank paid to appellant. It further appears that appellant's application to the German National Bank for the payment of this draft and his subsequent indorsement and delivery for collection at the request of Hall, and the payment to Hall upon his order of $1,497 of the proceeds thereof, were all acts performed in the belief on the part of appellant that Railey & Bro. were the parties who had in fact paid the draft.

It further appears that appellee was cashier of said German National Bank, and that while he was such cashier and before it assigned its claim and right of action to appellee, the appellant notified said bank that he would not stand liable to it upon his aforesaid indorsement, and that the loss, if any, rightfully fell on Railey & Bro., and that the bank was not, in his judgment, liable for the amount, and that he would defend the bank, free of charge, in any suit that might be brought against it to pay the same, and would also undertake to pay any judgment in the premises that should be rendered against it.  The trial in the superior court resulted in findings and judgment for appellee.

Mr. J. A. BENTLEY, for appellant.

Messrs. WELLS, MCNEAL and TAYLOR, for appellee.

CHIEF JUSTICE HAYT delivered the opinion of the court.

It is admitted that at the time of the transaction which forms the basis of this action, and for many years prior thereto, one John H. Hall was a customer of and depositor with Railey & Bro., bankers, at Weston, Mo.  The draft in question was issued for the balance remaining to the credit of this John H. Hall at this banking house at the time.  It was made payable to his order and mailed to his Denver address. This draft did not reach the party for whom it was intended; on the contrary, it fell into the hands of another person calling himself John H. Hall, and this man by the aid of appellant's indorsement secured payment upon the same.  The *bona fides* of the transaction on the part of appellant under these circumstances is not material.  The case may be determined upon the simple question of the liability of one who indorses a bill of exchange.  It is a well established principle of commercial law that one who indorses and delivers commercial paper thereby becomes responsible for its genuineness and that of all previous indorsements.  1 Dan-

iel on Neg. Inst., sec. 669a; Story on Bills of Ex., secs. 110–235.

It is not necessary for us to determine the rights of Railey & Bro., the drawers of this draft, had they paid the same to an innocent third party upon this forged indorsement. It is sufficient to say that they did not pay it, are not here complaining, and are not parties to this action. The draft was paid to the German National Bank of Denver by the drawees, Donnell, Lawson & Simpson of New York, and the amount so paid turned over to appellant. The drawees in making this payment had a right to, and undoubtedly did, rely upon the indorsement of both the Denver bank and that of appellant. The Denver bank in turn had recourse upon the indorsement of appellant.

It is evident that the German National Bank in indorsing this draft was acting upon the guaranty growing out of appellant's indorsement. It is not pretended that its cashier in indorsing the same was induced to do so by reason of having any knowledge of the handwriting or financial responsibility of the person who indorsed thereon the name of John H. Hall, other than that derived from the indorsement of Rhodes. If the facts were otherwise, the liability of appellant by reason of his indorsement would remain the same. This is not a case of a bank seeking to recover money paid by it on a forged check against the account of a depositor. As we have seen, Railey & Bro. did not pay this draft, and although it is well settled that banks are presumed to know the signatures of their customers, this presumption in no way aids appellant. There is no principle of law or of common sense that would extend this presumption to the officers of banks other than those with which such deposits are made. Upon the same principle when a drawee pays a forged bill of exchange to the holder thereof, he cannot recover back the money so paid. The reason upon which this rule is based is the negligence imputed to the drawee, who is supposed to know the handwriting of his correspondent much better than the holder does. This rule has no application to this

case. Here, the draft is admittedly genuine, the indorsement of Hall only being spurious. There is no principle upon which the drawee under the circumstances here disclosed can be held to be familiar with the handwriting of the payee. The reason upon which the rule is based failing, the rule cannot be held applicable. While, therefore, Railey & Bro. in a proper case might be estopped from setting up the forgery of the signature of one of their depositors to a check paid by them to an innocent third party, the drawees in New York, Donnell, Lawson & Simpson, with whom Hall is not shown to ever have transacted any business, are not so estopped.

It is contended that the German National Bank was but a mere agent to collect, and having collected the money and paid the same over to appellant, no liability rested upon the bank to refund the amount to the New York institution. This argument is plausible, but not sound. As to the question of the genuineness of the draft, each indorser in receiving and indorsing it was entitled to rely upon the credit of the previous indorsers. Appellant by his indorsement guaranteed the genuineness of the indorsement of Hall to him, and upon this guaranty the Denver bank was induced to give the paper the indorsement upon which it was paid by Donnell, Lawson & Simpson in New York. Under these circumstances, the New York institution had recourse upon the Denver bank, and the latter in turn upon appellant.

The rule of law which makes appellant liable in this case places the loss where it properly belongs. Appellant lent his credit by indorsing the paper to a man confined under a charge of forgery. He transacted the business for him at the bank at a time when such person could not have perpetrated the fraud without assistance. Certainly as between the Denver bank and appellant, the greater negligence is chargeable upon the latter, he having first received the draft from the person who committed the forgery. *Bank of Com. v. Union Bank*, 3 Coms. 230.

The judgment of the superior court is right and must be
*Affirmed.*